**MID PENN BANK, Appellant**

v.

**Zene FARHAT T/D/B/A I & S Homes & Saheira Farhat, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 16, 2013.
Filed June 25, 2013.

Steven J. Schiffman, Harrisburg, for appellant.

Robert G. Radebach, Halifax, for appellee.

BEFORE: BOWES, GANTMAN and OLSON, JJ.

OPINION BY OLSON, J.:

Appellant, Mid Penn Bank, appeals from the judgment entered on June 11, 2012 in the Civil Division of the Court of Common Pleas of Dauphin County. After careful consideration, we vacate and remand this matter to the trial court with instructions to enter judgment in favor of Appellant and against Appellees, Zene Farhat T/D/ B/A I & S Homes (Zene) and Saheira Farhat (Saheira), consistent with the conclusions set forth below.

■ The trial court summarized the testimony adduced during the bench trial in this matter as follows:

[Zene] is the son of [Saheira] and Ismail Farhat. [Zene] is a sole proprietor of a business that builds houses called I & S Homes.

On June 15, 2007, [Zene] met with [Appellant's] loan officer, Scott Woods (hereinafter "Mr. Woods"), who[ ] advanced a $165,000.00 unsecured line of credit to [Zene] (hereinafter "loan").[FN 1]

---

[FN 1] Identified as Loan No. 500041009.

On August 3, 2007, [Saheira] transferred Lot 19 of the Preliminary/Final Subdivision Plan of Pheasant Hill Phase I, Wayne Township, Dauphin County, Pennsylvania (hereinafter "the property") to [Zene] for $1.00. As a result, [Zene] became the record owner of the property from August 2007 through January 15, 2010. Construction of a house on the property started in December of 2007 and was completed in June of 2008. Meanwhile, [Zene] was paying timely interest payments on the loan he [received] in June of 2007. Near the end of 2009, Dennis Sweigart (hereinafter "Mr. Sweigart"), a commercial loan officer for [Appellant], contacted [Zene]. Mr. Swei-

gart had taken over [Zene's] file since Mr. Woods had left the company. [Zene] and Mr. Sweigart met on December 23, 2009. Mr. Sweigart informed [Zene] that he needed to begin paying on the principle [sic] and suggested [Zene] use the property to secure the loan. [Zene] refused to provide security and stated he would continue to pay interest. Additionally, [Zene] testified he informed Mr. Sweigart the property belonged to his [f]ather. Mr. Sweigart informed [Zene] that if he did not provide collateral the [Appellant] would file judgment against him.

Thereafter, Terrence Michael Monteverde (hereinafter "Mr. Monteverde"), senior vice president and chief credit officer, contacted [Zene] to instruct that he either provide security for the loan or pay the loan in full[,] pursuant to the loan documents. Again, [Zene] refused to provide security for the loan. [Zene] ceased making payments on the loan after December 30, 2009.

By deed dated January 15, 2010, the property was transferred back [to Saheira] for $1.00. In May of 2010, [Saheira] sold the property for $275,000.00.

[Appellant] obtained a judgment against [Zene] and a lien against his primary residence/real property on June 10, 2010.[FN 2, 3] However, [Zene's] primary residence was encumbered by a mortgage held by U.S. Bank in the amount of $149,778.71. Moreover, [on January 29, 2010, Zene] obtained a home equity loan in the amount of $50,000.00 secured by a mortgage on his personal residence. [Zene's] other assets were his business equipment. [Appellant] obtained a levy/judgment, but not a lien, against [Zene's] personal property. [ ]

---

[FN 2] [On June 7, 2010, Appellant entered a confessed judgment against Zene in

the amount of $168,210.01 at Docket No. 2010 CV 07599 in the Court of Common Pleas of Dauphin County.]

[FN 3] [Zene's primary residence is located in Halifax, Pennsylvania.]

Trial Court Opinion, 4/17/12, at 2–4 (record citations omitted; renumbered footnotes appear in original text).

Appellant commenced this action under the Pennsylvania Uniform Fraudulent Transfer Act (UFTA), 12 Pa.C.S.A. §§ 5101 *et seq.*, to pursue a judgment against Appellees [1] for the $165,000.00 obligation and the accrued interest.[2] The foregoing evidence was introduced at a non-jury trial conducted on February 9, 2012. At the conclusion of that proceeding, the court instructed the parties to submit proposed findings of fact and conclusions of law. The parties timely complied and, on April 17, 2012, the trial court entered judgment in favor of Zene and Saheira and against Appellant. Appellant filed a motion for post-trial relief on April 27, 2012, which was denied by order of court on April 30, 2012. Appellant filed a timely notice of appeal on May 23, 2012 and subsequently submitted a concise statement of errors complained of on appeal pursuant to the trial court's directive under Pa.R.A.P.1925(b). The trial court filed an opinion on June 20, 2012 stating that its reasons for awarding judgment in favor of Zene and Saheira and against Appellant were set forth in a prior opinion issued on April 17, 2012.

In its brief, Appellant raises two questions for our consideration:

Whether the trial court's findings of fact are unsupported by substantial, competent evidence and whether it erred as a matter of law when it found that [Zene's] conveyance was not fraudulent under § 5104 of the Pennsylvania Uniform Fraudulent Transfer Act because [Zene] did not possess actual intent to hinder, delay, or defraud a creditor when he conveyed the subject real estate to [Saheira?]

Whether the trial court abused its discretion and erred as a matter of law when it found that [Zene's] conveyance of the subject real estate to [Saheira] did not violate § 5105 of the Pennsylvania Uniform Fraudulent Transfer Act[?]

Appellant's Brief at 2.

Our standard of review in this case is as follows:

(a) **Available remedies.**—In an action for relief against a transfer or obligation under this chapter, a creditor, subject to the limitations in sections 5108 (relating to defenses, liability and protection of transferee) and 5109 (relating to extinguishment of cause of action), may obtain:

(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

\*　　\*　　\*

(3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

\*　　\*　　\*

(iii) any other relief the circumstances may require.

12 Pa.C.S.A. § 5107(a)(1), (3)(iii); *see also Kraisinger v. Kraisinger*, 34 A.3d 168, 174–175 (Pa.Super.2011).

---

1. Originally, Appellant's complaint named Zene, Saheira and Ismail Farhat, (Ismail), Zene's father and Saheira's husband, as defendants. Ismail was also named as he was a party to both the 2007 and 2010 deeds. Specifically, the 2007 deed transferred the property from Ismail and Saheira to Zene and the 2010 deed transferred the property from Zene back to Ismail and Saheira. Approximately one year after the complaint was filed, Ismail died and the trial court granted Appellees' motion to amend the caption to remove Ismail as a defendant.

2. Pursuant to § 5107(a) of the UFTA, a trial court enjoys the discretion to impose any remedy necessitated by the circumstances, including avoidance of a transaction, to satisfy a creditor's claims. In relevant part, the provision states:

In prior matters involving review of alleged fraudulent conveyances, we have stated that our standard of review of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the chancellor will not be reversed unless it appears the chancellor clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the chancellor's conclusion can reasonably be drawn from the evidence.

*Gallaher v. Riddle*, 850 A.2d 748, 749–750 (Pa.Super.2004), appeal denied, 580 Pa. 698, 860 A.2d 124 (2004) (citations and internal quotation marks omitted).

On appeal, Appellant argues that the trial court erred and/or abused its discretion in rejecting its claim that Zene's transfer of the property to his parents constituted a fraudulent conveyance under §§ 5104 and 5105 of the UFTA.[3] We agree.

Section 5104 of the UFTA provides, in relevant part, that:

(a) **General rule.**—A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) **Certain factors.**—In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

---

**3.** Appellant also contends that the trial court committed reversible error in basing its decision exclusively upon § 5104 of the UFTA and in failing to consider the claim that Zene's transfer constituted fraud under § 5105. Our review of the trial court's April 17, 2012 opinion, however, reveals that the trial court considered and rejected Appellant's § 5105 claim. Accordingly, we disregard Appellant's assertion that the trial court improperly failed to review the facts of this case under § 5105 of the UFTA.

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S.A. § 5104.

In applying these factors to the evidence adduced at trial, the court concluded that Zene's transfer of the property in 2010 was not a fraudulent transfer under § 5104 because the court "[could not] clearly determine without hesitance that [Zene's] conveyance of the property back to [Saheira] was *actually intended* to defraud [Appellant]." Trial Court Opinion, 4/17/12, at 10. As discussed below, although we concur with some of the trial court's determinations, we cannot agree with the court's overall assessment of the factors set forth in § 5104 and its ultimate conclusion that Appellant failed to come forward with sufficient evidence of Zene's actual intent to hinder, delay, or fraudulently impair Appellant's collection efforts.

█ The trial court reasoned that subsections (1), (4), and (10) of § 5104 supported the conclusion that Zene's transfer constituted a fraudulent transfer. We concur with these determinations. The challenged transfer was from a son to his mother and father and, thus, occurred between insiders. *See* 12 Pa.C.S.A. § 5104(b)(1). Moreover, the certified record confirms that the transfer took place after Appellant threatened to file a lawsuit against Zene. *See* 12 Pa.C.S.A. § 5104(b)(4). Lastly, the record demonstrates that Zene obtained a home-equity line of credit in the amount of $50,000.00, secured by a second mortgage on his personal residence, merely two weeks after he transferred the property. As a result, the transfer occurred shortly before a substantial debt was incurred. *See* 12 Pa.C.S.A. § 5104(b)(10).[4]

We cannot agree, however, with the trial court's determinations with respect to the factors listed in subsections (2), (5), and (7) of § 5104. In its opinion, the trial court concluded that § 5104(2) weighed against finding that Zene intended to hinder, delay, or defraud Appellant by transferring the property to his parents. In addition, the court determined that subsections (5) and (7) constituted "contested" factors that neither favored, nor weighed against, a finding of fraud in this case. Underlying each of these conclusions was the court's finding that Zene never controlled or had any financial stake in the property even during the period when he was the record owner of the land. *See* Trial Court Opinion, 4/17/12, at 5–7. Instead, the trial court concluded that, notwithstanding the August 3, 2007 deed, Saheira always maintained control of the property.

The trial court erred as a matter of law in concluding that Zene did not control or possess a financial stake in the property. Here, the parties stipulated to the admission of the August 3, 2007 deed transferring the property to Zene. The deed states that Saheira, as party of the first part, transferred to Zene "all [of her] estate, right, title, interest, property, claim and demand whatsoever …, in law, equity or

---

4. We also agree with the trial court's findings that subsections (3) and (6) of 5104(b) do not support a finding that a fraudulent transfer occurred. Section 5104(3) supports a finding of fraud where the transfer was concealed. *See* 12 Pa.C.S.A. § 5104(b)(3). Here, however, Appellant did not hold a mortgage interest in the property and the transfer from Zene to his parents was recorded in a deed dated January 15, 2010 and thereby made a part of the public record. Moreover, the certified record makes clear that Zene did not abscond. *See* 12 Pa.C.S.A. § 5104(b)(6) (debtor's departure from jurisdiction may be considered when determining intent to defraud). Finally, we agree that subsection (11) is inapplicable under the facts of this case. *See* 12 Pa.C.S.A. § 5104(b)(11).

otherwise, howsoever, in and to [the property] and every part thereof." Trial Exhibit J3 (Deed), 8/3/07, at 2 (unpaginated). Hence, the record is undisputed that Zene became the legal owner of the property by deed dated August 3, 2007 and that he continued in that capacity until he transferred the property back to his parents on January 15, 2010. Under the plain language of the deed, from August 3, 2007 until January 15, 2010, Zene acquired and held every legal and equitable interest that Saheira held prior to that period. *See Ralston v. Ralston*, 55 A.3d 736, 742 (Pa.Super.2012) ("nature and quantity of the interest conveyed must be ascertained from the deed itself") (quotation omitted).

Moreover, the court's finding that Zene lacked control or any financial interest in the property flatly contradicts the evidence offered at trial. During his testimony, Zene admitted that, within the period of his ownership of the property, he considered it his asset and he listed it on financial statements submitted on loan applications to other financial institutions. *See* N.T., 2/9/12, at 14–17. Because the trial court's conclusions with respect to subsections (2), (5), and (7) of § 5104 constituted legal error and rested upon a finding that is unsupported by the record, we are compelled to set these determinations aside.

■ We also find fault with the trial court's conclusion that § 5104(8) militated against a finding of fraud. Here, the trial court initially concluded, "Zene received no consideration for his relinquishment of the property **which is not reasonably equivalent** to the value of the subject property later sold for $275,000.00." Trial Court Opinion, 4/17/12, at 7 (emphasis added). Nevertheless, the court reasoned that the

conveyance was not fraudulent because Zene acquired the property for a nominal sum, Saheira funded the development of the property, Zene transferred the property to his parents for a nominal sum, and Zene did not profit from Saheira's subsequent sale of the property. *Id.* This was error since the plain terms of § 5104(8) confine the court's examination to the value of the consideration received by the debtor relative to the value of the transferred asset. *See supra.* Applying the correct standard, we are compelled to reinstate the trial court's initial determination, which held that Zene did not receive reasonably equivalent value for the property.[5] Accordingly, this factor supports a finding that Zene actually intended to hinder, delay or defraud Appellant in its collection efforts.

■ We now consider the trial court's application of § 5104(9), which instructs the court to determine whether "the debtor was insolvent or became insolvent shortly after the transfer was made[.]" 12 Pa.C.S.A. § 5104(b)(9). The Act defines insolvency and prescribes the legal effect thereof as follows:

§ 5102. Insolvency

(a) General rule.—A debtor is insolvent if, at fair valuations, the sum of the debtor's debts is greater than all of the debtor's assets.

(b) Presumption of insolvency.—A debtor who is generally not paying the debtor's debts as they become due is presumed to be insolvent. This presumption shall impose on the party against whom the presumption is directed the burden of proving that the nonexistence of insolvency is more probable than its existence.

---

5. Given the great disparity between the consideration received by Zene from the challenged transfer and Saheira's subsequent selling price for the property in an arms-length transaction, we find this factor particularly persuasive in our conclusion that Appellant demonstrated the requisite intent to delay, hinder, or defraud its collection efforts at trial.

12 Pa.C.S.A. § 5102(a)-(b). In this case, the trial court found that Zene was not insolvent because "he was timely paying all his bills" and "the subject transfer had no effect on [Zene's] financial position." Trial Court Opinion, 4/17/12, at 8. Again, these findings are contrary to the record.

In January 2010, when Zene transferred the property to his parents, his only other asset was his primary residence.[6] At that time, the residence was valued at approximately $246,900.00 and was encumbered by a mortgage for $150,000.00. Therefore, as of the date of the challenged transfer, Zene's debt to Appellant ($165,000.00) far exceeded his equity interest in the residence. In addition, two weeks after transferring the property to his parents, Zene obtained a home-equity loan for $50,000.00. That loan was secured by a second mortgage on his residence, which further diluted his equity interest in the home.

It is abundantly clear from the evidence of record that Zene was insolvent, or became insolvent, shortly after the challenged transfer was completed. There was overwhelming and undisputed evidence that Zene failed and refused to repay Appellant upon demand.[7] Given this and the other evidence discussed above, it was unreasonable for the trial court to conclude that Zene was paying his bills on time or that the subject transfer had no effect on [Zene's] financial position. We therefore conclude that § 5104(9) weighs in favor of finding fraud.

Based on the certified record in this appeal, and after carefully reviewing all of the evidence presented to the trial court, we are constrained to conclude that the trial court abused its discretion and erred as a matter of law in rejecting Appellant's claim that, in transferring the property to his parents, Zene intended to hinder, delay, or defraud Appellant's efforts to collect a debt within the meaning of § 5104. Accordingly, we vacate the judgment entered by the trial court and remand with instructions to enter judgment in favor of Appellant and against Appellees.[8]

Judgment vacated. Case remanded with instructions. Jurisdiction relinquished.

---

**6.** Several financial statements admitted into evidence identify various pieces of construction equipment as part of Zene's inventory of assets. At trial, however, Zene admitted that these items had been acquired with borrowed funds. N.T., 2/9/12, at 35. Based upon this testimony, and since the trial court makes no reference to construction equipment in tallying Zene's assets, we assume that he had no equity interest in such machinery during the relevant time period.

**7.** The parties do not dispute that Appellant's loan to Zene was repayable upon demand.

**8.** Because we have concluded that Appellant is entitled to relief under its initial claim predicated on § 5104, we decline to address at length the second issue raised on appeal. We note, however, that based upon the analysis set forth above as to § 5104(8) and (9), Appellant would be entitled to relief under 12 Pa.C.S.A. § 5105, which applies specifically to creditors whose claims arise before a transfer has been made. In relevant part, § 5105 states:

> **§ 5105. Transfers fraudulent as to present creditors**
> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa.C.S.A. § 5105.