J-A31005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| REYNOLDS E. JENKINS, JR. AND KIMBERLY A. JENKINS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| THOMAS D. GRUVER AND JACQUELINE K. GRUVER, | |
| Appellants | No. 673 MDA 2014 |

Appeal from the Order Entered March 25, 2014
In the Court of Common Pleas of Schuylkill County
Civil Division at No(s): S-1934-2006

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY BOWES, J.:               **FILED DECEMBER 08, 2014**

Thomas D. and Jacqueline K. Gruver contest the propriety of the equity court's determination that a prescriptive easement owned by Appellees Reynolds E. and Kimberly A. Jenkins over Appellants' land is twenty-two feet wide.  We affirm.

The present matter has an extensive procedural history.  Appellees instituted this declaratory judgment action in 2006 against Appellants and Nicholas Snitzer, seeking a declaration that Appellees enjoyed a prescriptive easement over property owned by those defendants.  The parties are title holders of adjacent land in West Brunswick Township, Schuylkill County.  Appellees have 16.5 acres of unimproved real estate that they acquired in 1997 from relatives, and the land in question was in Ms. Jenkins' family

since 1939. Appellants own a parcel consisting of 2.5 acres that they purchased in 1999, and, in 2012, while this case was pending, Appellants bought Mr. Snitzer's lot.

When they instituted the present lawsuit, Appellees averred that they acquired a prescriptive easement over a dirt road that traversed the two parcels now owned by Appellants. Appellees cannot access their acreage without utilizing the roadway in question. This action was necessitated by the fact that Appellants prevented Appellees from reaching their property by installing a chain across the road.

At the first trial in this case, Appellees established the following. Ms. Jenkins' grandparents bought Appellees' 16.5 acre lot in 1939, and it was used as a Christmas tree and wreath farm that was opened in approximately 1962 and did not close until the late 1970s. When the land was utilized commercially, large trucks and machinery would reach it by using the easement in question, which retained the same size into the 1980s. Ms. Jenkins and her family also used the road from the mid-1960s until 2002 to access their real estate for recreational purposes. They hiked and hunted on their acreage and cut firewood for personal use. Appellees' witnesses reported that no one ever gave them permission, which they never sought, to use the road. They also established that their use of the road was actual, continuous, adverse, visible, notorious and hostile from 1962 until 2002. Appellees' position was that they had acquired an easement by prescription over the roadway since they and their

relatives/predecessors in title had continuously used it without permission from the 1960s to 2002.

After a nonjury trial, the equity court found in favor of Appellants. It concluded that Appellees had established all the elements of a prescriptive easement except use without consent and use for the required period of twenty-one years. The court concluded that Appellees could not tack the use of the roadway by their predecessors in title/family members to satisfy the twenty-one-year period required to prove the existence of a prescriptive easement. It also inferred that the use was permissive based solely upon the fact that Ms. Jenkins' family was friendly with the former owners of Appellants' land.

On appeal, we reversed. **_Jenkins v. Gruver_**, 48 A.3d 490 (Pa.Super. 2012) (unpublished memorandum). We noted that tacking of a prior owner's use of a prescriptive easement is allowed under the applicable law and that the testimony of Appellees' witnesses was legally sufficient to prove that the use was non-permissive. We remanded for a determination of the width of the prescriptive easement.

To comply with our directive, the court conducted a second trial on December 20, 2013. After hearing testimony, it ruled that Appellees' easement was twenty-two feet wide. We outline the evidence utilized by the equity court in making this determination.

> Kimberly Jenkins testified that during the time of her use of the driveway, she traversed the driveway in various vehicles which ranged from twelve (12), to may be fifteen (15) feet wide.

- 3 -

Ms. Jenkins stated that it was not tight to get vehicles through the driveway and you did not have to maneuver around any rocks or other debris and that there was plenty of room on either side for maintenance and/or plowing when utilizing driveway over the course of the prescriptive period. Ms. Jenkins testified that she was aware that family members of hers used larger vehicles over the driveway for commercial uses of harvesting tree branches and Christmas trees. She further testified that the truck displayed in Plaintiff's Exhibit 8 was an example of a type of stake body truck that was regularly used for access on the driveway during the prescriptive period. Ms. Jenkins noted that the pictures of the driveway taken in September 2009 do not look the way the driveway looked throughout the height of the commercial operation and that in 2009 the driveway was much narrower and more grown-up than during the prescriptive period. Reynolds E. Jenkins, Jr. testified that he has been using the driveway to access the Jenkins' property since approximately 1984, when he began dating Kimberly A. Jenkins. Mr. Jenkins testified that when he started using the driveway in 1984, it was approximately between eighteen (18) and twenty-two (22) feet wide. Mr. Jenkins testified that at first he used a Nissan car to access to the property. He further testified that he subsequently used a pickup truck to go hunting and to cut firewood. Later on Mr. Jenkins operated a Christmas tree business with his brother-in-[l]aw and used a stake body truck for ingress and egress over the driveway. At the time of the tree/wreath business, Mr. Jenkins believed that the driveway remained eighteen (18) to twenty-two (22) feet wide and believed so because the stake body truck could easily get through and there was an ability for two (2) cars to pass each other on the driveway. Paul Alan Shealer, Kimberly A. Jenkins' brother, was actively involved in the tree operations on the Jenkins property. He testified that the equipment used included a 1978 Chevy Silverado, which was used from 1979 through the early 1990s at the farm and prior to the Chevy Silverado, a 1952 Dodge stake body truck was used. In the Christmas tree operation, an Asplundh chipper was used. Testimony revealed that this chipper was approximately nine (9) feet wide and would stick out beyond the wheels of a regular truck.

Testimony further revealed that a Ford 4000 backhoe and loader with Caretree 28 inch tree spade on the front was taken in and out of the property on the driveway and was used on the property starting between 1978 and 1982, and was about eight

(8) feet in width, similar to the stake body truck. Also used on the property was a John Deere tractor, [s]aid tractor was used from the mid-1960s through the early 1990s and was approximately seven (7) and eight (8) feet wide. Mr. Shealer also testified that they used a Ford 6610 with a twelve (12) foot disc that was purchased in 1982 (disc purchased in 1983 or 1984) which equipment was used throughout the 1980s and 90s at the property and was accessed through the driveway. Mr. Shealer testified that he measured the disc, which is the actual disc that was taken up and down the driveway for use on the Christmas tree farm and that using a surveyor's pole, the disc measured eleven (11) feet, six (6) inches to the outside tire, as depicted in Plaintiffs' Exhibit 15. Mr. Shealer testified that when taking the 11 ½ foot disc through the driveway, he had some room on both sides and no difficulty, except early on when there was still a bridge instead of the pipe and the disc would hang off the bridge. He noted that all the equipment shown in Plaintiffs' Exhibits 8 - 15, he had taken up and down the driveway for use on the Christmas tree farm. Mr. Shealer stated that when he was using the driveway for a Christmas tree operation, using the equipment shown in the pictures, the driveway was approximately twenty (20) feet wide.

Trial Court Opinion, 3/3/14, at 4-7 (citations to record omitted). Appellees submitted into evidence various photographs of the actual equipment used to harvest the Christmas trees, and the photographs were taken on their land.

The trial court credited Appellees' proof. It based its ruling "upon the width at the time the prescriptive period had run, that is approximately 1962-1983." *Id*. at 7. In light of the three eyewitnesses' reports about the type of vehicles, as confirmed by the pictures, used to traverse the easement when it was used to access the commercial Christmas tree operation, as well as the testimony of Mr. Jenkins and Mr. Shealer about its size during that period, the trial court found that the easement in question

was twenty-two feet wide. This appeal followed denial of Appellants' post-trial motion. On appeal, Appellants raise these issues for our review:

> A. Did the Trial Court abuse its discretion in finding that the prescriptive easement over the Appellants' driveway is twenty-two (22) feet wide?
>
> B. Did the Appellees/Plaintiffs meet their burden of proof to establish that the prescriptive easement was twenty-two (22') feet wide during the period of the alleged prescription?
>
> C. Did the Trial Court abuse its discretion and/or commit an error of law [by] failing to allow testimony and the admission of certified copies of historical aerial maps obtained from the United States Department of Agriculture and the National Archives?

Appellants' brief at 4. Initially, we outline the applicable standard of review:

> [W]e have stated that our standard of review of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the chancellor will not be reversed unless it appears the chancellor clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the chancellor's conclusion can reasonably be drawn from the evidence.

***Mid Penn Bank v. Farhat***, 74 A.3d 149, 153 (Pa.Super. 2013) (citation omitted). As a matter of course, "we are bound by the chancellor's findings of fact, including findings regarding the credibility of witnesses, because the chancellor has the opportunity to hear the witnesses and observe their demeanor on the stand." ***Makozy v. Makozy***, 874 A.2d 1160, 1168 (Pa.Super. 2005) (citation omitted).

Next, we observe that the equity court correctly concluded that the width of the easement was to be ascertained by examining its use when the prescriptive easement was created. In **Hash v. Sofinowski**, 487 A.2d 32, 34 (Pa.Super. 1985), we noted that a prescriptive easement is established "by actual, continuous, adverse, visible, notorious and hostile possession of the property in question for a period of 21 years." We continued, "It stands to reason that the scope of such an easement must necessarily be a function of the continued, adverse use by which it was generated and is thus limited to that of the prescriptive period." *Id*. We specifically held that a prescriptive easement is set by its location and size that arose during the prescriptive period. *Id*. at 36; *see also Bodman v. Bodman*, 321 A.2d 910, 912 (Pa. 1974) ("Because it is created by adverse use, an easement by prescription is limited by the use made during the prescriptive period.").

Appellants present a consolidated position as to their first two claims. They suggest that there was no competent evidence to support the trial court's finding that the easement was twenty-two feet wide. Appellants' brief at 20. They insist that their proof should have been credited. Appellants presented pictures of the present size of their driveway, which varied between eight to twelve feet in width. Additionally, they offered the testimony of a forester who claimed to know that the width of the 1962-1984 easement based upon the condition of the trees presently surrounding it. Appellants invite us to declare that the width of Appellees' easement is to

be "set at eight (8') to twelve (12') feet, which is the current width of [the] driveway[.]"  Appellants' brief at 27.

We decline this request to re-weigh the evidence.  Appellees presented three eyewitnesses as to the width of the easement during the prescriptive period.  Two witnesses stated outright that it was approximately twenty feet in width. Contrary to Appellants' assertion on appeal, this testimony was not impermissibly speculative and unreliable.  Mr. Shealer and Mr. Jenkins were permitted to offer estimates about the width of the easement since they personally observed it during the time the easement arose.  Pa.R.E. 701 (a) (a non-expert can offer testimony in the form of an opinion if the opinion is "rationally based on the witness's perception").  Ms. Jenkins confirmed that two cars could pass each other easily on the roadway in question, which means that the easement must have been significantly wider than it is presently.  As admitted by Appellants' own witness, the forestry expert, two cars could not pass each other on the present driveway.

Additionally, the equity court's conclusion was not merely premised upon the estimates proffered by Mr. Shealer and Mr. Jenkins, but also on the size of the vehicles depicted in the photographs that traversed the easement.  When the land was used as a Christmas tree farm, it was accessed by commercial vehicles that were well in excess of the present size of the driveway, which Appellants now insist is the scope of the easement in question.  Additionally, Ms. Jenkins reported that the present width of the

easement did not reflect its width from 1962 to 1984, and Mr. Gruver admitted that he was not aware of the use made of the driveway prior to 1999. The equity court was free to accept Appellees' evidence and reject that offered by Appellants. Hence, we reject the first and second contentions raised by Appellants and decline to award them their requested relief, which is a declaration that their present driveway reflects the contours of the easement enjoyed by Appellees.

Appellant's final position is that the equity court erred in failing to admit into evidence aerial photographs of the area taken by the United States Department of Agriculture during the time that the easement was being created. This contention is subject to a well-ensconced standard of review. "When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law." *Phillips v. Lock*, 86 A.3d 906, 920 (Pa.Super. 2014) (citation omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id*.

On appeal, Appellants claim that the photographs were admissible because they established that the easement did not exist. Specifically,

Appellants contend that the aerial pictures, which were taken at a great distance, "showed no evidence of the vast majority of the alleged driveway." Appellants' brief at 24. Appellants note that one "photograph shows the driveway going in a different direction and does not even depict the vast majority of [the] driveway[.]" *Id*. at 25. Appellants continue with the rhetorical question, "Why, didn't the certified copy of the 1971 aerial photograph from the United States Department of Agricultural [sic] no[t] show the vast majority of the driveway?" *Id*. They then answer this question with the declaration, "Because it simply did not exist as claimed by the Appellees." *Id*. Appellants assert that the "aerial photographs would be evidence to show that the driveway did not exist in its present location during the alleged period of prescription as alleged by the Plaintiffs and their witnesses." *Id*. at 26.[1] In closing, they aver that, "based on the historical aerial photographs, . . . it is clear that only a small portion of the driveway that currently exists served as access to [Appellees'] property and therefore the Superior Court should set the prescriptive easement aside." *Id*. at 27.

Based upon these assertions, it is clear that Appellants sought to introduce the pictures taken by the United States Department of Agriculture to demonstrate that there was no easement at all and to re-litigate the issue that was decided adversely to them on direct appeal, where we held that

---

[1] As noted by Appellees, the aerial photographs were taken at such a distance that the trees covered certain portions of the road.

Appellees enjoyed an easement over Appellants' driveway. That ruling is now the law of the case and cannot be disturbed. *In re Estate of Elkins*, 32 A.3d 768, 776 (Pa.Super. 2011). At trial, Appellants impermissibly sought to use the photographs to establish that there was no easement. The pictures were inadmissible for that purpose. Hence, we find that the trial court did not abuse its discretion in refusing to consider those photographs during its deliberative process.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2014