J-S31002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GEORGE ELI ROBERTS, BY AND THROUGH, HIS ATTORNEY-IN-FACT, JOSEPH BUTLER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GGNSC LANCASTER LP, D/B/A GOLDEN LIVING CENTER – LANCASTER; GGNSC LANCASTER GP, LLC; GGNSC HOLDINGS, LLC; GOLDEN GATE NATIONAL SENIOR CARE, LLC; GGNSC EQUITY HOLDINGS, LLC; GGNSC ADMINISTRATIVE SERVICES, LLC; GGNSC CLINICAL SERVICES, LLC; AND FARUK NGUYEN, | |
| Appellants | No. 1534 MDA 2014 |

Appeal from the Order Entered August 14, 2014
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): 13-01633

BEFORE:  BENDER, P.J.E., ALLEN, J., and WECHT, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JULY 08, 2015**

Appellants, GGNSC Lancaster, LP, d/b/a Golden Living Center – Lancaster, GGNSC Lancaster GP, LLC, GGNSC Holdings, LLC, Golden Gate National Senior Care, LLC, GGNSC Equity Holdings, LLC, GGNSC Administrative Services, LLC, GGNSC Clinical Services, LLC, and Faruk Nguyen, appeal from the order entered on August 14, 2014, denying their preliminary objection seeking to compel this matter to arbitration.  We affirm.

The relevant facts and procedural background of this case were set forth by the trial court as follows:

Plaintiff[,] George Eli Roberts [Roberts,] alleges that these [Appellants] owned, operated, licensed and/or managed Beverly Healthcare – Lancaster, now known as Golden Living Center – Lancaster (the Facility), and were engaged in the business of providing skilled nursing care and assisted living/personal care services to the general public.

[Roberts] has been a resident at the Facility since April 1, 2005. At the time of his admission, [Roberts] had a past medical history including paraplegia, peripheral vascular disease, anemia, esophageal reflux, Suprapubic catheter, and colostomy. He required assistance with care for all of his activities of daily living, including bed mobility, eating, and toileting.

On admission, [Roberts] signed the necessary papers. Included in the series of documents presented to the resident patient for signature was a "Resident and Facility Arbitration Agreement." This agreement provided that any disputes arising out of or in any way relating to the agreement or to [Roberts'] stay at the Facility, which could constitute a legally cognizable cause of action in a court of law, "shall be resolved exclusively by binding arbitration … and not by a lawsuit or resort to court process."

[Roberts] commenced this action on July 10, 2013, alleging that [Appellants'] professional negligence and reckless conduct caused [him] severe injuries during his admission at the Facility.[1] Those injuries included the development and/or worsening of multiple pressure ulcers, MRSA, urinary tract infections, falls, poor hygiene, and severe pain. The negligent and reckless conduct by [Appellants] consisted of mismanagement, improper/under-budgeting, under-staffing of the Facility and lack of training of the Facility employees, failure to provide adequate and appropriate health care, engaging in incomplete, inconsistent and fraudulent documentation, failure to develop an appropriate therapeutic care plan, failure to provide proper medication, and failure to provide sufficient food and water to preclude the injuries noted above, and failure to ensure the attainment of the highest level of physical, mental and psychological functioning. Roberts further alleges negligence *per*

- 2 -

*se* for violations of the Neglect of a Care-Dependent Person statute, 18 Pa. C.S.A. § 2713, and the Older Adults Protective Services Act, 35 P.S. § 10225.101, *et seq*.

> [1] [Roberts] also filed a complaint against Faruk Nguyen, the former administrator of the Facility during the relevant time of Roberts' residency, claiming that he was personally, jointly and vicariously liable, among other things, for the acts and omissions of himself and his agents, employees, servants, contractors, staff and/or partners and all other Defendants. (See No. CI-13-08746.) These two matters were consolidated on December 5, 2013.

Trial Court Opinion (TCO), dated 8/14/13, at 1-3.

Appellants filed preliminary objections to the complaint in the above-referenced matter, including a claim that Roberts should be compelled to arbitrate the present dispute in accordance with the arbitration agreement signed by Roberts. On August 14, 2014, the court issued an order and accompanying opinion denying Appellants' preliminary objection in the nature of a motion to compel arbitration. TCO, at 1-3. Appellants filed a timely notice of appeal. In response, the trial court issued a Pa.R.A.P. 1925(a) opinion, incorporating its August 14, 2013 opinion in which the court had already addressed the arbitration issues raised on appeal. Per order of court dated October 29, 2014, the trial court proceedings were stayed pending the outcome of this appeal.

Appellants now present the following issues for our review:

1. Did the trial court – and the Superior Court in [**Stewart v. GGNSC-Canonsburg, L.P.**, 9 A.3d 215 (PA. Super. 2010)] – erroneously construe the arbitration agreement and misapply Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, to find the availability of NAF as arbitrator to be "integral" to the

agreement to arbitrate such that a substitute arbitrator could not be appointed?

2. Did the trial court err in finding **Stewart** controlling despite the absence of any evidence that the parties to the arbitration agreement in this case considered the availability of NAF as arbitrator to be "integral" to the agreement to arbitrate?

3. Is the Superior Court's ruling in **Stewart** invalid for reading NAF's availability to conduct the arbitration given the subsequent reversal of the federal district court decision on which it relied?

Appellant's Brief, at 4.

Before addressing the merits of the issues raised, we note our standard of review:

> Our review of a claim that the trial court improperly denied the appellant's preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion in denying the petition. **Midomo Company, Inc. v. Presbyterian Housing Development Company**, 739 A.2d 180, 186 (Pa. Super. 1999). In the instant case, the issue presented – whether under the terms of the Agreement the parties are required to submit their dispute to arbitration – is strictly one of contract interpretation. No relevant facts are in dispute. Because contract interpretation is a question of law, our review of the trial court's decision is *de novo* and our scope is plenary. **Bucks Orthopaedic Surgery Associates, P.C. v. Ruth**, 925 A.2d 868, 871 (Pa. Super. 2007); **Highmark v. Hospital Service Association of Northeastern Pennsylvania**, 785 A.2d 93, 98 (Pa. Super. 2001).

**Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.**, 936 A.2d 1109, 1112-13 (Pa. Super. 2007) (internal quotation marks and brackets omitted).

First, we will address the issue of whether the trial court erred by relying on **Stewart** in its overruling of Appellants' preliminary objections.

Similar to the case before us, the plaintiff in **Stewart** filed a civil action against a nursing home facility for negligent care while she was admitted to the facility. **Stewart**, 9 A.3d at 216. Also analagous to the present case, the defendants/appellants in **Stewart** filed preliminary objections seeking to compel the enforcement of an arbitration agreement, as the parties had previously agreed that disputes would be submitted to arbitration for resolution. **Id.** More specifically, the arbitration agreement executed by the parties in **Stewart** expressly provided that a dispute, "shall be resolved exclusively by binding arbitration … in accordance with the National Arbitration Forum (NAF) Code of Procedure which is hereby incorporated into this Agreement, and not by any lawsuit or resort to court process." **Id.** The **Stewart** Court noted that "[u]nder the NAF Code of Procedure, the 'Code *shall be administered only by [the NAF]* or by any entity or individual providing administrative services by agreement with [the NAF].'" **Id.** at 216-217 (citations omitted; emphasis in original). The arbitration agreement in **Stewart** also contained a severability clause which stated: "In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the agreement shall remain effective." **Id.** at 217.

We agree with the trial court that the **Stewart** decision is exactly on point, as the arbitration agreement at issue in the case before us contains *the exact* NAF language and severability clause as in **Stewart**. **See** TCO, at 6. The issues raised in both **Stewart** and the present case stem from the

fact that NAF, the designated arbitration forum set forth in the executed arbitration agreement, can no longer accept such arbitration cases pursuant to a consent decree it entered with the Attorney General of Minnesota. **Stewart**, 9 A.3d at 217. **See also** TCO, at 4-5.

Having concluded that the trial court properly relied on **Stewart**, we will now address, together, the remaining issues raised by Appellants, as these issues are interrelated. Essentially, Appellants argue that despite the unavailability of the NAF, the arbitration agreement is still enforceable because the identity of the arbitrator was not integral to the agreement, and therefore, a substitute arbitrator should be appointed, "in order to honor the parties' core agreement to arbitrate." Appellants' Brief, at 10. We disagree with Appellants' conclusions.

> Section 5 of the Federal Arbitration Act provides in pertinent part:
>
> If in the agreement provision be made for a method of naming or appointing an arbitrator … such method shall be followed; but if … any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator … or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator … as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein.

9 U.S.C. § 5. Under Section 5, an arbitration agreement will not fail because of the unavailability of a chosen arbitrator unless the parties' choice of forum is an "integral part" of the agreement to arbitrate, rather than "an ancillary logistical concern." **Stewart**, 9 A.3d at 218-219 (citations omitted). We held in **Stewart** that the arbitration agreement could not be enforced due to

the unavailability of the NAF to act as arbitrators because the parties clearly intended to arbitrate before the NAF. *Id.* at 217. We reiterate the following portion of the trial court's well-reasoned analysis in *Stewart*, which we adopted as our own:

> Here, it was clearly the intent of Appellants to arbitrate before the NAF. Appellants presented a pre-printed agreement to Plaintiff in which the selection of an arbitral forum was already made. Moreover, the agreement states that this binding arbitration shall be conducted "in accordance with the NAF Code of Procedure, which is hereby incorporated into this agreement." The Code consists of over 65 pages of rules and procedures governing parties and the adjudication of their disputes. An agreement to submit to a specific forum and its comprehensive set of rules evidences an explicit intention to arbitrate exclusively before that organization…. Accordingly, this Court finds that the arbitral forum selection clause is not an ancillary, logistical concern but, rather, a primary purpose of the agreement itself. Therefore, the arbitration clause is unenforceable as an essential term of the agreement has failed[.]

*Id.* (internal citations & brackets omitted). Because the arbitration agreement in the present case contains identical language, we are persuaded by the foregoing reasoning in *Stewart* to conclude that the agreement here is also unenforceable.

The trial court further held in *Stewart* that, "the severability clause could not save the Agreement's arbitration clause because the trial court would be forced to rewrite the arbitration clause and devise a new form and mode of arbitration for the parties." *Id.* at 217. The court further noted that, "the replacement of an essential term is impermissible under general contract principles." *Id.* Agreeing with the trial court, we stated, "this Court

will not rewrite an arbitration agreement and insert additional terms to replace an unenforceable provision that was integral to the agreement. Sanctioning this type of action would run contrary to the clear intent of the parties as expressed by the plain language of the Agreement itself." *Id.* at 221.

Although the issue of whether an arbitration agreement is enforceable in the absence of the NAF had not been addressed by Pennsylvania case law prior to *Stewart*, we looked to other jurisdictions for guidance. Ultimately, the *Stewart* Court followed the decisions of numerous cases where the courts emphasized the plain language of the arbitration agreement as the sole evidence of the parties' intent,[1] which we believed to be consistent with well-established contract principles under Pennsylvania law. *Id.* at 219-221. As we stated in *Giant Food Stores, LLC v. THF Silver Spring Development, L.P.*, 959 A.2d 438 (Pa. Super. 2008), "[i]t is firmly settled that the intent of the parties to a written contract is contained in the writing

---

[1] One of the decisions that we followed in *Stewart* was *Khan v. Dell, Inc.*, 2010 WL 3283529 (D.N.J. 2010), which was reversed on appeal. *See Khan v. Dell, Inc.*, 669 F.3d 350, 356-57 (3d Cir. 2012). Appellants suggest that our decision in *Stewart* is flawed because of our reliance on the district court's decision in *Khan.* Appellants' Brief, at 14. However, *Khan* was just one case in a line of cases that influenced our decision. Moreover, it is a well-settled principle of Pennsylvania law that federal court decisions are not binding on the Superior Court. *Bochetto v. Piper Aircraft Co.*, 94 A.3d 1044, 1050 (Pa. Super. 2014) (citing *Kieban v. National Union Fire Ins. Co.*, 771 A.2d 39, 43 (Pa. Super. 2001)).

itself…. [W]hen the words of a contract are clear and unambiguous, we are to determine what the parties intended by looking only at the express language of the agreement." *Id.* at 448. (citations omitted).  Accordingly, if we look to the plain language of the arbitration agreement in the present case, it is clear that the parties intended to choose the NAF as their arbitral forum in the event of a dispute.

Finally, we note that a petition for allowance of appeal was granted in ***Wert v. Manorcare of Carlisle PA, LLC***, 95 A.3d 268 (Pa. 2014), on June 24, 2014.  One of the issues currently pending before our Supreme Court in ***Wert*** is, "[w]hether the Superior Court's decision in ***Stewart*** … holding that the NAF Designation voided an identical Arbitration Agreement, was incorrectly decided and should be reversed, where there is no evidence that the NAF designation was integral to the Agreement?"  ***Wert,*** 95 A.3d at 268-269.  The Supreme Court's docket indicates that the Court heard argument in ***Wert*** on April 7, 2015; however, no decision has been entered as of yet.  Therefore, ***Stewart*** remains binding precedent.  ***See Commonwealth v. Reed***, 107 A.3d 137, 143 (Pa. Super. 2014) ("This Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not been overturned by our Supreme Court.") (citation omitted).  ***See also McClung v. Breneman***, 700 A.2d 495, 497 n.3 (Pa. Super. 1997) (following the decision in ***Dodson v. Elvey***, 665 A.2d 1223 (Pa. Super. 1995), as binding precedent where the

Pennsylvania Supreme Court had granted allocator in **Dodson** but had not yet rendered a decision).

In sum, the trial court found that the arbitration agreement between Roberts and Appellants was not enforceable due to the unavailability of the NAF to act as arbitrators. Accordingly, the trial court denied Appellants' preliminary objection in the nature of a motion to compel arbitration. We affirm.

Order **affirmed**. Case **remanded**. Jurisdiction **relinquished**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/8/2015