J-A14014-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| TRIZECHAHN GATEWAY LLC, A DELAWARE LIMITED LIABILITY COMPANY | : IN THE SUPERIOR COURT OF : PENNSYLVANIA : : |
| Appellant | : : : : |
| v. | : : |
| | : No. 1472 WDA 2018 : |
| SCHNADER HARRISON SEGAL & LEWIS LLP, PAUL H. TITUS, AND THOMAS D. ARBOGAST | : : : |

Appeal from the Judgment Entered November 19, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  GD-07-008527

BEFORE:  OTT, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    FILED NOVEMBER 8, 2019

Trizechahn Gateway LLC ("Trizec"), who was the plaintiff below, appeals from the judgment entered November 19, 2018, in the Court of Common Pleas of Allegheny County.  The trial court entered judgment against it and in favor of Schnader Harrison Segal & Lewis, LLP ("Schnader"), Paul H. Titus ("Titus"), and Thomas D. Arbogast ("Arbogast"), defendants below.  Trizec brought this action under Pennsylvania's former Uniform Fraudulent Transfers Act of 1993 ("PUFTA"), 12 Pa.C.S.A. §§ 5101 et. seq.[1]  After a thorough review of the

_____

[1] We note Trizec filed the notice of appeal from the September 18, 2018 order of the trial court denying post-trial relief.  See Notice of Appeal, 10/15/2018.

submissions by the parties, relevant law, and the certified record, we vacate

and remand with instructions.

We take the underlying facts and procedural history in this matter from

the trial court's May 24, 2018 and November 30, 2018 opinions and our review

of the certified record.

> The action stems from another case, at GD 00-013044, in which [Trizec] obtained a substantial judgment against certain former partners of a disbanded law firm, Titus & McConomy. After the Supreme Court of Pennsylvania affirmed the judgment, with some modification to the amount of interest due, [Trizec] began its efforts to collect on the judgment from the different partners. The instant action is one of those efforts and is brought under [the PUFTA].[a] The material facts are virtually undisputed and reveal an unusual scenario.
>
> > [a] The [P]UFTA has since been replaced by the Uniform Voidable Transfers Act of 2014. The parties agree that the [P]UFTA applies here. . . . .
>
> FACTUAL BACKGROUND
>
> [ ] Titus was the "managing partner in dissolution" of the now defunct firm of Titus & McConomy, which had breached a 10-year commercial lease with [Trizec]. Five years were left on the lease when the breach occurred and [ ] Titus and the firm had set aside only a small portion of the rental balance to cover the firm's obligations. The [trial court] set forth the reasons for the main award in excess of $2.9 million in a 23-page [m]emorandum in [s]upport of [o]rder [in case GD 00-013044], docketed on March 31, 2005 (hereinafter, the "March Memorandum"). That memorandum was filed roughly three months before a final non-

_____

Although an appeal "does not properly lie from an order denying post-trial motions, but rather upon judgment entered following disposition of post-trial motions[,]" this Court will treat an appeal as timely filed if judgment is later entered on the docket. McConaghy v. Bank of New York, 192 A.3d 1171, 1173 n.1 (Pa. Super. 2008). Here, the trial court entered judgment via praecipe on November 19, 2018.

jury verdict was entered adding counsel fees and interest. As of March 31, 2005, [ ] Titus recognized that he and the other former partners of Titus & McConomy would need appellate counsel. [ ] Titus and [ ] Arbogast eventually retained the law firm they had joined, [Schnader], in the [s]pring of 2005.

Since [ ] Titus, not surprisingly, had trouble getting money for a cash retainer for the appeal from the other former partners of Titus & McConomy, it was suggested by one of Schnader's attorneys, probably Carl Solano according to the credible evidence, that the firm could place a lien on the capital accounts of [ ] Titus and [ ] Arbogast. At that time, there was approximately $110,000 in both accounts. After the lien was placed, [ ] Titus withdrew from the Schnader partnership and continued to work there as an employee, with no duty to make further contributions to the capital account. [ ] Arbogast as well resigned as an equity partner and his account also received no further contributions.

Those capital accounts were also assets of the estates in bankruptcy of both [ ] Arbogast and [ ] Titus. The [t]rustee, however, abandoned those particular assets, leaving it to the Court of Common Pleas to sort out which of the competing creditors, [Trizec] or Schnader, was entitled to those proceeds.

[Trizec] contends that the granting of liens to Schnader on their capital accounts by [ ] Titus and [ ] Arbogast was an improper attempt to defeat the rights [Trizec] had to execute upon those accounts. Because of the discharges in bankruptcy, the claims against [ ] Titus and [ ] Arbogast as individuals were moot.

The instant action had been pending for many years for reasons that were irrelevant to the underlying judgment and also to the instant appeal.

As [the trial court] stated in [its] March Memorandum [in case GD 00-013044], the unavoidable suggestion prior to the instant trial testimony was that, at the time the liens were granted, [ ] Titus, [ ] Arbogast and Schnader had acted to defeat [Trizec's] right to collect the judgment that would surely be entered against the former Titus & McConomy partners. This would have been in keeping with [ ] Titus's blithe handling of the winding up of that partnership's rental obligations, and it is not surprising that [Trizec] was highly skeptical of the legitimacy of the transfer. The

subsequent discharges in bankruptcy of [ ] Titus and [ ] Arbogast's substantial obligations to Schnader would only have confirmed [Trizec's] view of the transactions.

However, these understandable suspicions were dissipated, for the [trial c]ourt at least, by the testimony of two witnesses from Schnader who demonstrated that Schnader was very properly protecting its ability to collect its fees from its clients, [ ] Titus, [ ] Arbogast, and the other former partners of Titus & McConomy.

There were three separate counts asserted by [Trizec] in the captioned complaint, each against all the [d]efendants and titled as follows:

> Count I, Fraudulent Transfer Pursuant to 12 Pa.C.S.A. § 5104(a)(1).
>
> Count II, Fraudulent Transfer Pursuant to 12 Pa.C.S.A. § 5104(a)(2)(ii).
>
> Count III, Fraudulent Transfer Pursuant to 12 Pa.C.S.A. § 5105.

The gist of each of these claims as to [ ] Titus and [ ] Arbogast is that, at different times prior to the granting of the liens at issue, they had reason to know that [Trizec] had claims for unpaid rent, of varying degrees of certainty, against them as individuals and also against the partners of their defunct law firm. Those claims are now moot because of the discharges in bankruptcy.

The claims against Schnader rest on the contention that it did not supply and did not expect to supply "reasonably equivalent value" in legal services for the liens they took. After hearing all the testimony and considering all the evidence we found that Schnader had indeed agreed to supply and did supply "reasonably equivalent value" (and more) in exchange for the now-disputed lien.

Trial Court Opinion, 12/3/2018, at 1-4 (footnote omitted).

At trial, the trial court found:

George McGrann and Bruce Merenstein testified very credibly about Schnader's custom and practice regarding capital accounts,

- 4 -

retainers and the necessity of early preparation of appellate briefs and involvement with post-trial motions when a large judgment is highly likely to be entered against a client. We will not recite their testimony here but simply state that virtually everything they said made sense and demonstrated that Schnader was not acting in bad faith. Schnader did not aid and abet [ ] Titus or [ ] Arbogast in a scheme to deprive [Trizec] of assets to seize. They did do their partners the favor that would probably not be granted to other "new" clients and did not demand a bigger retainer or a cash retainer. Furthermore, there is no moral, ethical or legal duty that a law firm provide free representation to its own partners, an unspoken assumption that contributes to the skepticism of [Trizec] to the transfer here.

Trial Court Opinion 5/24/2018, at 4-5.

On May 24, 2018, following a non-jury trial, the trial court found in favor of Schnader and against Trizec. On July 12, 2018, Trizec filed a post-trial motion. On September 18, 2018, the trial court denied the motion. The instant, timely appeal followed.[2]

Initially, we note that the trial court complicated our review of this appeal by writing two brief opinions in this matter, which are all but devoid of citation to record, to pertinent legal authority, and analysis of the statute at issue. Moreover, its decision appears partially reliant on the March 2005 opinion in case GD 00-013044, which is not included in the certified record. Further, the trial court's decision to treat claims that Trizec brought under three separate sections of the PUFTA as if Trizec brought them as one count

_____

[2] On October 19, 2018, the trial court directed Trizec to file a concise statement of errors complained of on appeal. Trizec filed its Pa.R.A.P. 1925(b) statement on November 1, 2018. On November 30, 2018, the trial court issued an opinion.

makes parsing its reasoning all but impossible. Trizec's decision to raise seven overlapping and repetitive issues on appeal makes analysis even more difficult. Given this, for ease of disposition, we have reordered and combined Trizec's issues on appeal into two issues, 1) all claims related to the trial court's finding under Sections 5104(a)(1) and 5108; and 2) the findings under Sections 5104(a)(2) and 5105.

Our standard of review in this case is as follows:

In prior matters involving review of alleged fraudulent conveyances, we have stated that our standard of review of a decree in equity is particularly limited and that such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious. The findings of the chancellor will not be reversed unless it appears the chancellor clearly abused the court's discretion or committed an error of law. The test is not whether we would have reached the same result on the evidence presented, but whether the chancellor's conclusion can reasonably be drawn from the evidence.

Mid Penn Bank v. Farhat, 74 A.3d 149, 153 (Pa. Super. 2013) (citation omitted).

The relevant sections of the PUFTA of 1993 provide as follows. 12 Pa.C.S.A. § 5103 states:

(a) General rule.—Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person.

(b) Reasonably equivalent value.—For the purposes of sections 5104(a)(2) (relating to transfers fraudulent as to present and future creditors) and 5105 (relating to transfers fraudulent as to present creditors), a person gives reasonably equivalent value

if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, noncollusive foreclosure sale or the exercise of a power of sale for the acquisition or disposition of the interest of the debtor upon default under a mortgage, deed of trust or security agreement or pursuant to a regularly conducted, noncollusive execution sale.

12 Pa.C.S.A. § 5103.

Section 5104 states:

(a) General rule.—A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) Certain factors.—In determining actual intent under subsection (a)(1), consideration may be given, among other factors, to whether:

(1)    the transfer or obligation was to an insider;

(2)    the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

12 Pa.C.S.A. § 5104 (emphasis added).

Section 5105 states:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa.C.S.A. § 5105.

- 8 -

Section 5108 provides in pertinent part:

(a) Certain transfers or obligations not fraudulent.—A transfer or obligation is not fraudulent under section 5104(a)(1) (relating to transfers fraudulent as to present and future creditors) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.

12 Pa.C.S.A. § 5108(a).

When this Court engages in statutory interpretation, we must be mindful of the following:

[a]s in all cases of statutory interpretation, our goal is to ascertain the intent of the General Assembly in adopting the statute. 1 Pa.C.S.[A.] § 1921(a). In doing so, we must, if possible, give effect to all the provisions of a statute. 1 Pa.C.S.[A.] §§ 1921, 1922. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.[A.] § 1921(b). Only when the words are ambiguous may we look to the general purposes of the statute, legislative history, and other sources in an attempt to determine the legislative intent. 1 Pa.C.S.[A.] § 1921(c). In construing a statute, the courts must attempt to give meaning to every word in a statute as we cannot assume that the legislature intended any words to be mere surplusage. Furthermore, we should avoid construing a statute in such a way as would lead to an absurd result. 1 Pa.C.S.[A.] § 1922.

Holland v. Marcy, 883 A.2d 449, 455–456 (Pa. 2005).

In Trizec's first contention, which it designates as issues 1, 5, and 7 in its brief, it argues the trial court erred in considering the intent of Schnader in determining that there was not a fraudulent transfer under 12 Pa.C.S.A. § 5104(a)(1); it erred in applying the good faith defense enunciated in 12 Pa.C.S.A. § 5108; and it erred in its application of 12 Pa.C.S.A. § 5104(a)(1)

because Schnader did not provide reasonably equivalent value. Trizec's Brief, at 3-4.

Trizec maintains that the trial court erred in considering the intent of defendant Schnader rather than the intent of defendants Titus and Arbogast in applying 12 Pa.C.S.A. § 5104(a)(1).

We agree with Trizec that under 12 Pa.C.S.A. § 5104(a)(1), the issue is the debtor's intent in making the transfer, not transferee's intent, which is irrelevant. See 12 Pa.C.S.A. § 5104(a)(1) (stating in pertinent part, "if the debtor made the transfer or incurred the obligation. . . with actual intent to hinder, delay or defraud any creditor of the debtor."). Furthermore, under Section 5104(b), there are eleven factors that the trial court must consider in making a decision as to whether a fraudulent transfer occurred under Section 5104(a)(1). The trial court failed to discuss any of them. Instead, the trial court did not make any finding of whether a fraudulent transfer occurred, rather it immediately made a finding, presumably under Section 5108, that Schnader had a defense to the claim. This was error. The trial court was required to analyze the eleven factors under Section 5104(b) to determine Titus and Arbogast's actual intent under Subsection (a)(1). Only if the court ascertained that they had fraudulently transferred the funds could it determine whether Schnader had a viable defense pursuant to Section 5108. See e.g. Farhat, supra at 153-156 (analyzing the factors under Section 5104(b) and concluding trial court erred in determining there was no fraudulent transfer).

As noted above, Section 5108(a) provides a defense to Section 5104(a)(1) for the person who "took in good faith and for a reasonably equivalent value[.]" 12 Pa.C.S.A. § 5108(a) (emphasis added). As Trizec states, the trial court never actually cites to Section 5108, but it is apparent the trial court intended to apply this section.

In its opinion, the trial court clearly explains why it credited the testimony of Schnader's witnesses regarding good faith. See Trial Court Opinion, 5/24/2018, at 4-6. We simply have no basis to overturn this credibility finding, which the trial court supported by reference to the evidence and which is not demonstrably capricious. See Farhat, supra at 153.

However, it is not sufficient under Section 5108(a) to only find Schnader acted with good faith; there must also be a determination that the lien on the capital accounts constituted a reasonably equivalent value. The trial court provides no explanation for its statement that Schnader "met the statutory standard of 'reasonably equivalent value,'" except to say that "Schnader did indeed provide[] equivalent value and more in legal services." Trial Court Opinion, 5/24/2018, at 5, 6.

> "Value" is to be determined in light of the purpose of this chapter to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition.

12 Pa.C.S.A. § 5103 cmt. (2); see Fell v. 340 Associates, LLC, 125 A.3d 75, 84 (Pa. Super. 2015) (holding trial court erred in finding reasonably

equivalent value where debtor transferred liquor license because transferee had to borrow money from debtor to acquire the license and did not immediately pay back loan), appeal denied, 140 A.3d 13 (Pa. 2016).

In Fell, this Court discussed the reasonably equivalent value analysis as follows:

> We reject, however, the trial court's determination that the value of the consideration received by 340 Associates was reasonably equivalent to the value of the liquor license transferred to 334 Kayla. See 12 Pa.C.S. § 5104(b)(8). 334 Kayla, in fact, borrowed $75,000 from 340 Associates in order to buy the license and did not start repaying the loan until July 3, 2012. Thus, 334 Kayla did not transfer any property to 340 Associates in exchange for the license. See 12 Pa.C.S. § 5103(a). 334 Kayla did not secure or otherwise satisfy a preexisting debt in exchange for the license. See id. Because the purpose of [the] PUFTA is to protect 340 Associates' estate from being depleted to the prejudice of its unsecured creditors, see 12 Pa.C.S. § 5103 cmt. (2), 340 Associates' only asset was the liquor license, and 340 Associates lent the purchase price of the license to 334 Kayla, we disagree with the trial court that the record established 334 Kayla transferred property or otherwise satisfied an antecedent debt. See 12 Pa.C.S. §§ 5103(a), 5104(b)(8); Farhat, 74 A.3d at 154. To paraphrase our Supreme Court, the distribution of 340 Associates' only asset—leaving it incapable of discharging its debts—in conjunction with the other badges of fraud found by the trial court, establishes fraud as a matter of law. See Heaney [v. Riddle], 343 Pa. [453, 458, 23 A.2d 456, 458 (Pa. 1942)]; Farhat, 74 A.3d at 154–[1]56. Having discerned an error of law, we vacate the judgment in favor of Appellees, reverse the order denying Appellant's post-trial motion, remand with instructions to enter judgment in favor of Appellant, and remand for further proceedings to resolve which relief Appellant receives.

Fell, supra at 84 (footnote and record citation omitted); see also Klein v. Weidner, 2010 WL 27910, at *2 (E.D.Pa. Jan. 6, 2010) ("[n]ot just any consideration given necessarily constitutes value in every instance.

- 12 -

Consideration having no utility from the viewpoint of a creditor does not constitute value for purpose of § 5103(a) and, hence for purposes of §§ 5104(a)(2) and 5105.") (citation omitted), affirmed, 729 F.3d 280 (3d Cir. 2013).[3]

While representing Titus and Arbogast in the appellate court may protect the debtor's estate, the trial court does not explain how the consideration has any utility from the viewpoint of Trizec since the legal services provided were to appeal Trizec's judgment.

Because the trial court failed to undertake the proper analysis under 12 Pa.C.S.A. § 5104(a)(1) and failed to undertake any analysis of "reasonably equivalent value" from the creditor's point of view, when it presumably applied Section 5108, we are constrained to vacate the judgment in favor of Schnader.

In its remaining claims, designated as issues 2, 3, 4, and 6 in Trizec's brief, Trizec argues the trial court erred in failing to address its claims under 12 Pa.C.S.A. §§ 5104(a)(2) and 5105. Trizec's Brief, at 3-4. It also again argues the trial court erred in viewing the matter based upon the intent of Schnader rather than Titus and Arbogast, in its apparent application of Section

_____

[3] "While we recognize that federal court decisions are not binding on this court, we are able to adopt their analysis as it appeals to our reason." Kleban v. Nat. Union Fire Ins. Co. of Pittsburgh, 771 A.2d 39, 43 (Pa. Super. 2001) (citation omitted).

5108 to claims brought under Sections 5104(a)(2) and 5105, and in its finding on reasonably equivalent value. See id. Because we have granted relief on Trizec's first issue, we need not address these claims in detail. See Siegal v. Stefanyszyn, 718 A.2d 1274, 1277 n. 6 (Pa. Super. 1998). However, Trizec is correct that the trial court should not have analyzed its claims pursuant to 12 Pa.C.S.A. §§ 5104(a)(2) and 5105 concordantly with it analysis of Section 5104(a)(1). Moreover, the relevant inquiry under these sections of the PUFTA is the intent of Titus and Arbogast, not Schnader. Also, by its terms, Section 5108's good faith defense does not apply to claims made pursuant to Sections 5104(a)(2) and 5105. Lastly, while the defense of reasonably equivalent value does apply to these sections, the trial court must examine reasonably equivalent value from the viewpoint of Trizec, not Titus and Arbogast, and in concert with the definition of value and reasonably equivalent value delineated in 12 Pa.C.S.A. §§ 5103(a) and (b). See Klein, supra at *2 (citation omitted).

Accordingly, for the reasons discussed supra, we vacate the judgment of November 19, 2018. Further, we remand with the following instructions. The trial court is to issue a new decision, which contains a thorough analysis[4] of the factors contained in 12 Pa.C.S.A. § 5104(b) and an analysis of the intent

_____

[4] We direct the trial court's attention to the analyses provided by the trial courts in Fell v. 340 Associates, 125 A.3d 75 (Pa. Super. 2015) and Mid Penn Bank v. Farhat, 74 A.3d 149 (Pa. Super. 2013).

- 14 -

of Titus and Arbogast under 12 Pa.C.S.A. § 5104(a)(1). If the trial court determines there was a fraudulent transfer under 12 Pa.C.S.A. § 5104(a)(1), it can then determine whether 12 Pa.C.S.A. § 5108 applies, in so doing, it must analyze "reasonably equivalent value" from the point of view of Trizec. The trial court must also undertake a separate analysis of the claims under 12 Pa.C.S.A. §§ 5104(a)(2) and 5105, without consideration of 12 Pa.C.S.A. § 5108. In making any determination of "reasonably equivalent value" the court must consider the definitions of value and reasonably equivalent value in accordance with 12 Pa.C.S.A. §§ 5103(a) and (b) and the Bar Association comment.

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/8/2019